IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| PATRICK LEMUEL BASS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:05-cv-603-MHT-SRW |
| | ) |
| SHERIFF JAY JONES, et al., | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' SPECIAL REPORT

COME NOW Jay Jones, Sheriff of Lee County, Alabama, and Donnie Surrett, Defendants in the above-styled cause, and submit their Special Report to the Court.

## INTRODUCTION

On June 24, 2005, Plaintiff filed his Complaint in the United States District Court for the Middle District of Alabama. On July 18, 2005, this Court ordered the Plaintiff to file an amendment to his Complaint "informing the court of the true names of the 'Lee County Sheriff's Department Task Forces' who allegedly violated his constitutional rights." On August 16, 2005, the Plaintiff filed an amendment to his Complaint but still did not give the true names requested by the Court. On August 24, 2005, this Court ordered Defendants to file a Special Report. On October 5, 2005, this Court granted Defendants' Motion for Extension of Time allowing them until October 26, 2005, to file their Special Report and Answer.

Plaintiff was arrested on May 30, 2005, on multiple charges and was booked into the Lee County Detention Facility on the same date. (Exhibit A, Inmate File of Patrick Lemuel Bass, "Inmate File," Inmate Booking Sheet; Exhibit B, Inmate File[1], Inmate Charge Sheet; Exhibit C,

---

[1] Attached hereto is the Affidavit of Cary Torbert, Jr., the custodian of the documents attached to this Special Report, kept in his normal course of business. See Exhibit S, Affidavit of Cary Torbert, Jr., attached hereto.

Uniform Arrest Report dated May 30, 2005.)  On September 7, 2005, Plaintiff pled guilty to the charge of resisting arrest and was found guilty and sentenced to 180 days confinement with credit for time already served.  (Ex. B, p. 2; Exhibit D, SJIS Case Detail.)

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges first that he was subject to excessive force during his arrest on May 30, 2005. (Plaintiff's Complaint, p. 9.)  Specifically, he alleges he was beaten and handcuffed and that he sustained a broken nose, facial scars with bruises and swelling, and neck and back injuries.  (Plaintiff's Complaint, p. 9-10.)  Plaintiff further alleges that he is in "confinement" in the Lee County Detention Facility without phone or visitation privileges and cannot get any returned requests telling him why he is in confinement.  (Plaintiff's Complaint, pp. 9-10.)  In his Amended Complaint, Plaintiff further alleged that he did not receive medical attention until the morning after the alleged beating.  (Plaintiff's Amendment to his Original Complaint.)  Plaintiff seeks $100,000.00 in damages.  (Plaintiff's Complaint, p. 10.)  He further requests that this Court dismiss all state and county charges pending against him. (Plaintiff's Complaint, p. 10.)

## DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and completely without basis in law or fact.  Defendants deny that they acted, or caused anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.  (Exhibit E, Affidavit of Sheriff Jay Jones, "Jones aff." ¶ 3; Exhibit F, Affidavit of Donnie Surrett, "Surrett aff." ¶ 2.)  Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

I.     **FACTS**

    A.     **Arrest on May 30, 2005**

On May 27, 2005, Plaintiff escaped the custody of the Meriwether County Jail in Georgia. Plaintiff assaulted a jailer with a shank, took the jailer's keys, and escaped the jail on foot. (Exhibit G, United States Marshals Service Report of Investigation.) On May 28, 2005, the Meriwether County Sheriffs Department obtained arrest warrants on Plaintiff for escape and aggravated assault. (Ex. G.) On May 30, 2005, Sergeant Donnie Surrett received a call from the United States Marshall's Office informing him that Plaintiff had escaped from the Meriwether County Jail in Georgia and that they had received information that Plaintiff had traveled to an area of Phenix City, which is in Lee County, Alabama. (Surrett aff. 3.) Therefore, Sergeant Surrett went to Phenix City, Alabama and met with officers of the United States Marshall's and the Phenix City Police Department. (Surrett aff. 4.) The officers from the Phenix City Police Department secured a search warrant for the home at the address of 1502 Fletcher Road, Phenix City, Alabama, in order to search for the Plaintiff. (Surrett aff. 5.) The Phenix City SWAT Team – which is made up of officers from the Russell County Sheriff's Department and the Phenix City Police Department – responded to the situation. (Surrett aff. 6.)

The officers from the Lee County Sheriff's Department, Russell County Sheriff's Department, Phenix City Police Department, Phenix City SWAT Team, and U.S. Marshall's Office proceeded to 1502 Fletcher Road, Phenix City, Alabama. (Surrett aff. 7.) When we arrived at 1502 Fletcher Road, Sergeant Surrett heard someone call out that the Plaintiff was on the second floor of the home and was armed with a gun. (Surrett aff. 8.) Therefore, the SWAT Team went inside to search for the Plaintiff. All the other officers, including Sergeant Surrett, stayed outside the home. Their duty was to secure the perimeter of the home in case the Plaintiff

3

attempted to flee. (Surrett aff. 9.) At one point, the officers from the SWAT Team came outside and stated that they could not find the Plaintiff. They asked if the officers on the perimeter had seen the Plaintiff, but they had not. Because the perimeter of the home secured, there was no way the Plaintiff could have escaped. (Surrett aff. 10.) So, the SWAT Team members re-entered the home. (Surrett aff. 11.) The next time the SWAT Team members exited the home, they had the Plaintiff in handcuffs. (Surrett aff. 12.)

The first time that Sergeant Surrett saw the Plaintiff on May 30, 2005, was when Plaintiff exited the home in handcuffs with the SWAT Team officers. (Surrett aff. 13.) The SWAT Team officers informed Sergeant Surrett that they had had to pull the Plaintiff out of the inner part of a wall, where the Plaintiff was hiding, and he then began fighting, kicking, and punching the officers. The Plaintiff was also armed with a gun. (Surrett aff. 14.) Sergeant Surrett was one of the officers who participated in transporting Plaintiff to the Lee County Detention Facility. Plaintiff had a cut on his eye and nose. Therefore, on the way to the Jail, Plaintiff was taken by an ambulance service where the paramedics examined Plaintiff's wounds. The paramedics informed Sergeant Surrett that the Plaintiff did not have any serious injuries. (Surrett aff. 15; Ex. C.) Therefore, Plaintiff was taken to the Jail and processed. (Surrett aff. 15.)

Later during Plaintiff's incarceration, he was charged with promoting prison contraband in the first degree, after a long metal shank made of heavy gauged wire which was sharpened on one end, was found in Plaintiff's mattress. (Exhibit H, Incident Report dated August 24, 2005; Exhibit I, Special Report; Exhibit J, Officer's Return after executing Writ; Exhibit K, Affidavit Charging Crime; Exhibit L, Case File Summary.) Three other inmates in the same cell-block also had home-made weapons hidden in their cells.

4

### B.     Medical Care

It is the policy of the Lee County Sheriff's Department that all inmates confined in the Lee County Detention Facility are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being. (Jones aff. ¶ 4.)  Medical care rendered to inmates in the Lee County Detention Facility will be delivered under the direction of a licensed health care provider.  (Jones aff. ¶ 5.)  No health care personnel or Detention Facility officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.  (Jones aff. ¶ 6.) Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.  (Jones aff. ¶ 7.)  Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.  (Jones aff. ¶ 8.)

Two methods may be utilized by inmates incarcerated in the Lee County Detention Facility in order to secure health care services:  (1) <u>Verbal Request</u>:  An inmate may make a verbal request for emergency medical attention to any member of the Detention Facility staff at any time.  (2) <u>Written Request</u>:  An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Facility staff. (Jones aff. ¶ 9.)  Requests for medical treatment will be accepted by members of the Detention Facility staff at any time.  (Jones aff. ¶ 10.)  When a request for medical treatment is made to a member of the Detention Facility staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request.  It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner.  Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will

be offered. (Jones aff. ¶ 11.) Medical requests of an emergency nature will be handled immediately. (Jones aff. ¶ 12.) As part of the booking process, inmates will be informed of the methods by which they may maintain medical treatment during the booking process. (Jones aff. ¶ 13.) The Detention Facility nurse, under the direction of the Detention Facility Administrator, is charged with the responsibility of obtaining appointments for inmates with physicians in order that they may receive medical treatment or for scheduling times when the treating physician may attend to health care needs at the Detention Facility. (Jones aff. ¶ 14.) All health care rendered to inmates will, at the doctor's discretion, be given privately to the inmate, outside the presence of a Detention Facility official. Should the physician request, a Detention Facility officer will be present for any and all examinations the treating physician deems appropriate. (Jones aff. ¶ 15.)

On the way to the Jail after his arrest on May 30, 2005, Plaintiff was taken by an ambulance service where the paramedics examined Plaintiff's wounds. The paramedics informed Sergeant Surrett that the Plaintiff did not have any serious injuries. (Surrett aff. 15; Ex. C.) The next day, Plaintiff was examined by the Jail Physician, John H. McFarland, MD. (Exhibit M, Inmate File, Physicians Notes dated May 31, 2005.) Dr. McFarland noted that Plaintiff had a swollen nose, a hemotoma under his eye, one area of abrasion, and a little puncture on the left upper arm. Dr. McFarland ordered Motrin or Tylenol for pain as needed. (Ex. M.) The doctor also instructed Plaintiff to keep his head elevated. (Ex. M.) Plaintiff was prescribed Naprosyn and Flexeril. (Ex. M.) Plaintiff was also instructed on wound care. Jail staff members ensured that Plaintiff received his prescribed medications. (Exhibit N, Medication Administration Record.)

On June 7, 2005, the Plaintiff saw Dr. McFarland for a "spider bite" on his leg. (Exhibit O, Physician Notes dated June 7, 2005.) Dr. McFarland noted that the abrasions from the prior

week were healing and that his nose was swelling down. (Ex. O.) In the subsequent health care notes, there was no further mention of injuries that occurred on May 30, 2005.) (Exhibit P, Health Care Documentation dated August 10, 2005; Exhibit Q, Physician Notes dated August 18, 2005; Exhibit R, Physician Notes dated August 23, 2005.)

### C. Grievance Procedure

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. The inmates are given an Inmate Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have. Any such grievances are filed in the inmate's jail file. Upon review of Plaintiff's Jail File, I can see that Plaintiff did not file a grievance concerning the allegations made the basis of his Complaint. (Jones aff. ¶ 16.)

## II.   LAW

**A.   All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th

Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C.A. § 1983 prohibits a <u>person</u>, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C.A. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted. <u>Id.</u>; <u>Carr v. City of Florence, Ala.</u>, 916 F.2d 1521, 1525 n.3 (11th Cir. 1990).

  **B.**   **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

    **1.**   **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility in that he did not file a grievance concerning the allegations made the basis of his Complaint. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See <u>Brown v. Tombs</u>, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of

Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Tallapoosa County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

    **2.**    **Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . . In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." Mitchell v. Brown & Williamson Tobacco Corp., 294 F.3d 1309 (11th Cir. 2002). Upon review of the evidence, including the medical records in Plaintiff's Jail File, it is clear that Plaintiff did not sustain injuries that were greater than de minimis. Therefore, his complaint is due to be dismissed.

    **C.**    **Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

Public officials, like Defendants here, are protected in their individual capacities by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed." Anderson v. Creighton,

483 U.S. 635, 636 (1987) (emphasis added). The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*." Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

Our circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992) (quoting Zeigler, 716 F.2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." Id. (quoting Zeigler, 716 F.2d at 849).

Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994).

Once it is established that the Plaintiff has stated a claim and that the Defendants were acting within their discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994); Adams v. St. Lucie County Sheriff's Dep't, 962 F.2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), rev'd and reasoning of original dissent adopted, 998 F.2d 923 (11th Cir. 1993) (en banc).

Not only must the "clearly established" law pre-date the subject incident, the law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. See Rodgers, 39 F.3d at 311; Hansen v. Soldenwagner, 19 F.3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show

10

that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" Kelly v. Curtis, 21 F.3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, they must be at least "materially similar." Adams, 862 F.2d at 1575 (Edmondson, J., dissenting) (approved en banc, 998 F.2d 923). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. at 1150.

The evidence clearly shows that Defendants have done nothing to cross any bright line of clearly established constitutional law. Therefore, they are entitled to qualified immunity.

       1.     **Excessive Force Claim**

The Eleventh Circuit recently summarized the legal principles for analyzing excessive force during arrest claims. In Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004) the court wrote:

> The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee, 284 F.3d at 1197 (citing Graham v. Connor, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)). A court looks to the "totality of circumstances" to determine whether the manner of arrest was reasonable. See Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S. Ct. 1694, 1700, 85 L. Ed. 2d 1 (1985). "[I]n determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Lee, 284 F.3d at 1198 (citing Leslie v. Ingram, 786 F.2d 1533, 1536 (11th Cir. 1986)); see also Vinyard [v. Wilson], 311 F.3d at 1347. It is well settled that the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396, 109 S. Ct. at 1871-72; Vinyard, 311 F.3d at 1347; Lee, 284 F.3d at 1197. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense,

uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97, 109 S. Ct. at 1872.

Id. at 1277-78 (footnotes omitted).[2]

The analysis is an "objective one; the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (citing Graham v. Connor, supra, Tennessee v. Garner, supra and Terry v. Ohio, 381 U.S.1)

In the instant case, Plaintiff does not even allege that Sheriff Jones was not present at the scene of the arrest. Further, Sergeant Surrett did not use *any* force against Plaintiff nor did he witness *any* force used against Plaintiff. Plaintiff correctly points out in his Complaint that Sergeant Surrett did transport him to the jail. However, Sergeant Surrett did not personally participate nor did he witness the actual arrest being effectuated. Plaintiff was already in handcuffs outside the house when Sergeant Surrett first saw him. Because Sergeant Surrett was not involved in any alleged excessive force used on Plaintiff, Plaintiff's claim for excessive force fails as a matter of law.

### 2. Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992).

---

[2] The Eleventh Circuit and the United States Supreme Court articulate the standard a bit differently. The extent of the injury does not appear in the higher court's analysis. Under either standard, however, these Defendants are entitled to summary judgment.

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

In the instant case, there is no evidence that the Plaintiff had a serious medical need. In fact, the evidence shows that Plaintiff had only minor injuries. Further, Plaintiff was examined by paramedics immediately after his arrest and was treated by a medical doctor the next day. Further, Plaintiff was treated by medical care providers several other times during his incarceration at the Lee County Detention Facility. An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute

deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[3] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

In the instant case, the evidence shows that Plaintiff was examined by paramedics and treated by a medical doctor, who are not trained and licensed medical providers, are in no way

---

[3] The medical director was a trained and licensed nurse. 302 F.3d at 846.

responsible for second-guessing the judgments of nurses and doctors. Therefore, Defendants are entitled to qualified immunity from Plaintiff's claims.

        **3.     Conditions of Confinement**

In <u>Farmer v. Brennan</u>, the Court held that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. 825, 828 (1994). This "subjective recklessness" standard allows an official to avoid liability when he fails "to alleviate a significant risk that he should have perceived, but did not." <u>Id.</u> To the extent that Plaintiff complains about being placed in administrative segregation upon being booked into the jail, Defendants that such classification served a legitimate penological purpose and did not violate Plaintiff's constitutional rights. Only three days prior to being booked into the Lee County Detention Facility, Plaintiff had attacked a jailer with a metal shank and escaped. Further, Plaintiff had attacked officers in attempting to resist arrest. Clearly, placing Plaintiff in administrative segregation was necessary for the security and safety of the Lee County Detention Facility inmates and staff. Therefore, Plaintiff cannot show that Defendants acted with subjective recklessness with regard to his conditions of confinement.

    **D.    Plaintiff has failed to allege personal involvement as required by 42 U.S.C. § 1983.**

The language of 42 U.S.C. § 1983 requires proof of an affirmative causal connection between the actions taken by the defendants and the constitutional deprivation. <u>Swint v. City of Wadley</u>, 51 F. 3d 988 (11th Cir. 1995). The requisite causal connection may be shown by the personal participation of the defendant, a policy established by the defendant resulting in

indifference to constitutional rights or a breach of a duty imposed state of local law which results in constitutional injury.  <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir. 1986).

### 1. All Plaintiff's claims against Sheriff Jones must fail because he had no personal involvement in the alleged constitutional violation.

The Plaintiff has failed to allege that Sheriff Jones was in any way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any of the conditions of his confinement.  Plaintiff has offered no allegation demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm.  There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sheriff Jones-- to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights.  As such, Plaintiff's claims are due to be dismissed against this Defendant.

To the extent that Plaintiff's claim against Sheriff Jones is an attempt to hold him liable under a *respondeat superior* theory, his claim must similarly fail.

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*.  Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation.  The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged depravation, and he fails to do so.

<u>Dolihite v. Maughon</u>, 74 F.3d 1027, 1052 (11th Cir. 1996).  There are absolutely no facts that show a causal connection between any action of Sheriff Jones and the alleged constitutional violation.  Therefore, Plaintiff's claims against Defendant Jones are due to be dismissed.

### 2. All claims against Donnie Surrett must fail because he had no personal involvement in the alleged constitutional violation.

The Plaintiff has failed to allege that Donnie Surrett was in any way personally involved in the alleged violations of Plaintiff's constitutional rights. Plaintiff correctly points out in his Complaint that Sergeant Surrett did transport him to the jail. However, Sergeant Surrett did not personally participate nor did he witness the actual arrest being effectuated. Plaintiff was already in handcuffs outside the house when Sergeant Surrett first saw him. Therefore, Sergeant Surrett was not personally involved in any alleged excessive force used in effectuating the arrest of Plaintiff. Further, once Plaintiff was in the custody of the jail, Sergeant Surrett had no responsibility for Plaintiff's care. Therefore, Plaintiff's claims against Sergeant Surrett fail as a matter of law.

### E. Plaintiff's Claims are Barred because they are not ripe according to Heck v. Humphrey

Because Plaintiff was convicted of resisting arrest, his claims for damages which relate to his arrest are barred as a matter of law pursuant to the dictates of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). When a particular complaint is barred by Heck, the proper procedure is to dismiss the Complaint based on lack of subject matter jurisdiction. See Murphy v. Martin, 343 F. Supp. 2d 603, 609 (E.D. Mich. 2004) (explaining that "because the complaint in this respect fails to state a cognizable federal claim, the better approach is to dismiss it for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).")

In Heck, the United States Supreme Court reasoned that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486-87.

Plaintiff has not shown that his conviction has been reversed, expunged, or declared invalid by a competent court. Further, the Heck opinion made it clear that Heck's influence barred not only direct challenges to an arrest or detention, but that it also barred any civil action which might *indirectly* cast doubt on the prior criminal conviction.

> *An example of . . . a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful*--would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. (This is a common definition of that offense. See People v. Peacock, 68 N.Y. 2d 675, 505 N.Y.S.2d 594, 496 N.E.2d 683 (1986); 4 C. Torcia, Wharton's Criminal Law § 593, p. 307 (14th ed. 1981).) He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata, see n. 2, supra, the § 1983 action will not lie.

Heck, 512 U.S. at 487 n.6 (emphasis added). See Harden v. Pataki, 320 F.3d 1289, 1295 (11th Cir. 2003) (noting the Supreme Court's explanation that "that a state prisoner may not maintain an action under 42 U.S.C. § 1983 if *the direct or indirect effect* of granting relief would be to invalidate the state sentence he is serving") (quoting Spencer v. Kemna, 523 U.S. 1, 21 (1998) (Ginsburg, J., concurring) (emphasis added); Uboh v. Reno, 141 F.3d 1000, 1006 (11th Cir. 1998) (explaining that "a civil proceeding challenging the grounds on which the prosecution against Uboh had been commenced *indirectly* would implicate the question of Uboh's guilt; this type of parallel inquiry by way of a civil suit prior to the resolution of a criminal action based on the same set of events is precisely the quandary that Heck prohibits") (emphasis added).

Consequently, since the Plaintiff was convicted of the charge of resisting arrest, Heck compels the conclusion that his arrest was indeed lawful and any civil challenge to it, even an indirect one, is barred. Thus, Defendants are entitled to summary judgment.

18

In addition, to the extent that Plaintiff requests that this court dismiss all pending charges against him, Defendants submit that this court is without jurisdiction in this case to grant such relief

### F.      Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  <u>Greason</u>, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[4]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

---

[4] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

## CONCLUSION

Defendants deny each and every allegation made by Plaintiff Duntay Caldwell in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

Respectfully submitted this 26th day of October, 2005.

> **s/Kelly Gallops Davidson**
> KELLY GALLOPS DAVIDSON Bar No. DAV123
> Attorney for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive
> Post Office Box 240909
> Montgomery, Alabama 36124
> Telephone: (334) 262-1850
> Fax: (334) 262-1889
> E-mail: kdavidson@webbeley.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this the 26th day of October, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

> Patrick Lemuel Bass
> P.O. Box 2407
> Opelika, AL 36801

> **s/Kelly Gallops Davidson**
> OF COUNSEL